IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00406-KLM

LILLIAN S. BRODIE,

Plaintiff,

v.

WILLIAM RUNYON,

Defendant.

---

**ORDER**

---

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Motion for Leave to Amend the Complaint to Include Exemplary Damages Against Defendant William Runyon** [#20] (the "Motion"). Defendant filed a Response [#26] in opposition to the Motion [#20], and Plaintiff filed a Reply [#27]. The Court has reviewed the briefs, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#20] is **GRANTED**.[1]

[1] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties. *See* [#15, #17].

## I.  Background

This matter arises from a pedestrian-involved motor vehicle incident occurring on July 4, 2022, in Gunnison County, Colorado.  *Compl.* [#5] at 2-3.  Plaintiff amended the Complaint [#5] on May 16, 2023, to remove two Plaintiffs and one count from the Complaint [#5].  *See generally Am. Compl.* [#30].  Plaintiff asserts that Defendant is liable for injuries sustained by Plaintiff under a theory of negligence.  *Am. Compl.* [#30] at 4-5.  Notably, Defendant admits that he "made an error in judgment" in the incident in question.  *Response* [#26] at 2.

Relying on information obtained through discovery, Plaintiff now seeks leave to amend her complaint to include a request for exemplary damages against Defendant.  *See generally Motion* [#20].  As discussed below, Plaintiff asserts that Defendant's conduct "before, during and after" the incident establishes prima facie proof of a triable issue of exemplary damages.  *Motion* [#20] at 4.  Specifically, Plaintiff argues that Defendant displayed willful and wanton conduct when he: (1) drove off-road, at night, with people on his car near a large group of people; (2) left the scene of the incident; and (3) drove while intoxicated by drugs and alcohol.  *Id*. at 6-13.  In contrast, Defendant argues that Plaintiff failed to establish a "prima facie case of willful and wanton conduct" and therefore exemplary damages are inappropriate.  *Response* [#26] at 3.  Defendant argues that the evidence does not prove that: (1) it was reasonable to expect people to be walking where he was driving; (2) his act of leaving the scene constitutes willful and wanton conduct; and (3) he was intoxicated when the incident occurred.  *Id*. at 5-14.

## II.  Legal Standard

The Court has discretion to grant a party leave to amend her pleadings. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). In diversity cases such as this, a motion to amend a complaint to add an exemplary damages claim is governed by Colorado state law. *Klein v. Grynberg*, 44 F.3d 1497, 1503 (10th Cir. 1995). Under Colorado law, a claim for exemplary damages may not be included in any initial claim for relief and may only be added by amendment to the pleadings "after the exchange of initial disclosures . . . and the plaintiff establishes prima facie proof of a triable issue." Colo. Rev. Stat. § 13-21-102(1.5)(a). At this stage in the litigation, a plaintiff should be granted "some leeway in establishing [her] prima facie case." *Leidholt v. Dist. Ct.*, 619 P.2d 768, 769 (Colo. 1980).

Prima facie proof of a triable issue requires "a showing of reasonable likelihood that the issue will ultimately be submitted to the jury for resolution." *Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007) (quoting *Leidholt*, 619 P.2d at 771 n.3). Such proof is established through discovery or evidentiary means. *Id.* at 450. It is the jury who will decide the merits of an exemplary damages claim. *See id.*; *E & S Liquors, Inc. v. U.S. Fidelity & Guar. Co.*, No. 08-cv-01694-WYD-KLM, 2009 WL 837656, at *2 (D. Colo. Mar. 26, 2009).

A claim for exemplary damages under Colorado law is appropriate where the events resulting in a personal injury are "attended by circumstances of fraud, malice, or willful and wanton conduct." Colo. Rev. Stat. § 13-21-102(1)(a). Willful and wanton conduct is defined as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences of the

rights and safety of others, particularly the plaintiff." *Id.* § 13-21-102(1)(b). The Colorado Supreme Court has held that, "[w]here the defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result, the statutory requirements" are met. *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005).

## III. Analysis

Based on the following, the Court finds that Plaintiff provides sufficient evidence to support her allegations that Defendant's actions on the night of July 4, 2022, constituted willful and wanton conduct pursuant to Colo. Rev. Stat. § 13-21-102(1)(b).

### A. Allegations That Defendant Engaged in Reckless and Heedless Conduct

Plaintiff alleges that Defendant engaged in willful and wanton conduct through his "course of actions" at the party where the incident occurred. *Proposed Am. Compl.* [#20-3] ¶¶ 15, 21. Plaintiff asserts that Defendant failed to drive on established paths, failed to look out for other persons walking or standing in the immediate vicinity, and failed to keep control of his vehicle. *Id*. ¶ 15. In her Proposed Amended Complaint [#20-3], Plaintiff does not explicitly assert that Defendant could not see out of the front of the car. *See id*. However, Plaintiff alleges that Defendant exited his vehicle after the collision and exclaimed that he was not sure what he had hit. *Id*. ¶ 19. In addition, Plaintiff states that the Colorado State Patrol found Defendant at fault for the incident and that he pled guilty to some of the criminal charges related to the incident. *Id*. ¶ 25. In support of her claim for exemplary damages, Plaintiff directs the Court's attention to the following evidence: (1) at least thirty people were near the bonfire; (2) the incident occurred after dark; (3) the

location of the incident was off-road; and (4) Defendant admitted he could not see where he was going.  *Motion* [#20] at 6-10.

Defendant argues that the evidence does not support a reasonable expectation that people would be walking in the area where he was driving.  *Response* [#26] at 5-6.  Defendant points out that there were only about thirty people left at the campfire after the incident, although this does not indicate how many people were there at the time of the incident itself.  *Response* [#26] at 5-6 (citing *Ex. A* [#20-1] at 97).  As Officers Daniels and others reported, most of the campers left the area after the incident.  *See Ex.* A [#20-1] at 97, 100 ("As I looked down the road, I could see a multitude of vehicles driving in my direction"); *Ex. B* [#20-2] at 4 ("Most of the kids involved have left / gone home with sober parties[.]").  This evidence, when viewed in a light most favorable to Plaintiff, supports the conclusion that there was a large group of people in the area where Defendant was driving when the incident occurred.

Further, the allegations support a finding that there was a high likelihood of injury because the partygoers were teenagers, many of whom may have been drinking alcohol.  *See Ex. A* [#20-1] at 86 ("[T]he crowd was mostly drunk high schoolers . . . .").  The risk of danger was compounded by the fact that it was night and partygoers were walking between parked cars and the campfire.  *See id*. at 78, 85.  Thus, a reasonable jury could find that it was reasonable to expect that people would be walking in the area where Defendant drove his car.  Therefore, the Court finds that the evidence supports a finding that there was a strong possibility of injury to pedestrians when Defendant drove his vehicle around the campfire.

Next, the Court finds that the allegations support a finding that Defendant was conscious of his conduct and the existing conditions and knew or should have known that injury would result under the standard set forth in *Coors v. Security Life of Denver Insurance Co.*, 112 P.3d 59, 66 (Colo. 2005). The evidence supports the claim that Defendant was conscious of the risk posed by driving around the campfire and that he was therefore reckless when he allegedly chose to drive in the manner that he did.

First, driving around with multiple people on the hood of a car is an obviously gross deviation from the standard of care of a reasonable driver. *See Ex. A* [#20-1] at 26. Any driver, even a teenage one, would be conscious of the many risks of having people hang on to a moving car.

Second, Defendant admitted that he could not see where he was going with people on the hood of his car. *Id*. at 46. Therefore, much like the defendant in *Hendrickson v. Doyle*—who "jump[ed] blind" into an area where people were skiing—Defendant here drove blind into an area where people were walking. No. 14-cv-02013-WJM-KLM, 2015 WL 2106225, at *4 (D. Colo. May 4, 2015). Defendant argues that he is unlike the *Hendrickson* defendant because there is no sworn testimony that he drove blind into an area where he knew people would normally be walking. *Response* [#26] at 7-8. However, Defendant did just that by his own admission and the above finding that people were reasonably expected to be walking nearby. *See Ex. A* [#20-1] at 46.

Lastly, Defendant's statements to officers after the incident support a finding that he was aware of the danger posed by his conduct but disregarded the risk. First, he told Officer Hooks the decision to allow people to "car surf" was a "dumb drunk idea . . . ." *Id.* Then, he stated, "I really F'ed up here." *Id*. Therefore, the allegations and evidence

provided by Plaintiff support a finding that Defendant knew that his conduct was dangerous.

**B. Allegations That Defendant Fled the Scene**

In her Proposed Amended Complaint, Plaintiff asserts that Defendant's act of fleeing the scene demonstrates willful and wanton conduct pursuant to Colo. Rev. Stat. § 13-21-102. *See Proposed Am. Compl.* [#20-3] at 21-24. Plaintiff alleges that after Defendant ran her over, he got back in his vehicle, left the scene of the incident, and drove to his parents' house in Crested Butte. *Id.* ¶ 20. She further alleges that Defendant knew or should have known that Plaintiff was seriously injured when he left the scene. *Id.* ¶ 22. Plaintiff points to witness statements, police reports, and Defendant's own admissions to support her claim that Defendant left the scene of the incident. *Motion* [#20] at 10-11 (citing *Ex. A* [#20-1] at 46, 79; *Compl.* [#5] ¶¶ 20, 22-23; *Answer* [#10] ¶¶ 20, 22-23).

Defendant rightfully distinguishes the facts of this case from the cases on which Plaintiff relies in the Motion [#20]. *See Response* [#26] at 8-9. Defendant waited until Plaintiff had been removed from under his car before leaving and he soon after turned himself in to police. *See Ex. A* [#20-1] at 31, 46. He did not immediately flee the scene and deny involvement in the incident like the defendant in *Siemens v. Romero*, No. 09-cv-02065-KLM-CBS, 2010 WL 427893, at *4 (D. Colo. Feb. 3, 2010). Despite these differences, however, the Court finds that the evidence still supports the assertion that Defendant fled the scene of the incident.

As stated, the evidence is viewed in a light most favorable to Plaintiff. *Hendrickson*, 2015 WL 2106225, at *3. Leaving the scene of an incident, when viewing "the defendant's

entire course of conduct," indicates that a person has been operating his vehicle "heedlessly, recklessly, and without regard to . . . the safety of others." *Jones v. Cruzan*, 33 P.3d 1262, 1264 (Colo. App. 2001). Here, Defendant did not remain at the scene of the incident until authorities arrived but instead left to drive toward the town of Crested Butte. *See Ex. A* [#20-1] at 25. Defendant argues that he encountered law enforcement sooner because when he left the scene he headed toward town and thus toward law enforcement. *Response* [#26] at 9-10. However, there is no evidence to suggest that he actually encountered law enforcement sooner or that alerting authorities was Defendant's motive when he left the scene. Further, Defendant did not attempt to call police on his way into town. *See Ex. A* [#20-1] at 45 (stating that Ms. Timmons was the reporting party). Likewise, police encountered the car carrying the injured Plaintiff before Defendant returned to turn himself in. *Id*. The delay led police to begin investigating the incident as a hit and run. *See, e.g.*, *id*. at 52. Therefore, taken in a light most favorable to Plaintiff, the allegations and evidence could support a finding that Defendant's fleeing the scene constituted willful and wanton conduct.

**C. Allegations That Defendant Drove Under the Influence of Drugs and Alcohol**

Plaintiff alleges that Defendant consumed alcohol or illicit drugs before arriving to and during the party and was therefore under the influence when the incident occurred. *Proposed Am. Compl.* [#20-3] ¶¶ 10-11, 21, 26. Plaintiff further asserts that Defendant exited his vehicle after the incident and "excitedly exclaimed that he was intoxicated." *Id*. ¶ 19. In support, Plaintiff directs the Court to witness statements, police reports, the results of Defendant's breathalyzer test, and Defendant's own statements to police. *Motion* [#20] at 11-12 (citing *Ex. A* [#20-1] at 26, 46, 90; *Compl.* [#5] ¶ 11; *Answer* [#10]

¶ 11). The Court finds that the evidence that Defendant was driving under the influence is sufficient to establish prima facie proof of willful and wanton conduct. "[E]xemplary damages may be awarded based on evidence that 'the incident occurred while the defendant was driving under the influence of alcohol.'" *Ahilo v. Kliem*, 412 P.3d 902, 912 (Colo. App. 2016) (quoting *Ortivez v. Davis*, 902 P.2d 905, 911 (Colo. App. 1995)).

Here, by his own admission, Defendant was driving under the influence of alcohol and drugs. *Ex. A* [#20-1] at 46 (stating that he had "a few shots and probably three beers" and that he smoked marijuana earlier in the day). Further, Defendant was given a portable breathalyzer test which showed that he had a blood alcohol level ("BAC") of 0.033. *Id*. Although that BAC is below the legal limit, the Court notes that Defendant was under twenty-one years of age at the time of the incident. *See* Colo. Rev. Stat. § 42-4-301(2)(a), (d)(*I*). Defendant should not have had any alcohol in his system within two hours of driving. *See id*. Conversely, Corporal Gouker stated that Defendant performed roadside maneuvers "consistent with that of a sober party." *Ex. A* [#20-1] at 26. However, multiple officers reported smelling alcohol on Defendant's breath when questioning him that night. *Id*. at 26, 27. Likewise, multiple witnesses told Deputy Beda that they had observed Defendant consume alcohol at the party. *Id*. at 90. Therefore, taken in a light most favorable to Plaintiff, the allegations and evidence could support a finding that Defendant's intoxication constituted willful and wanton conduct.

In conclusion, the Court finds that Plaintiff pleads sufficient facts to make a prima facie showing of willful and wanton conduct by Defendant which supports her claim for exemplary damages. Accordingly, the Motion [#20] is **granted**.

## IV. Conclusion

For the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion [#20] is **GRANTED**. Plaintiff shall file a clean copy of the Amended Complaint [#20-3] **no later than June 13, 2023**.

Dated: June 6, 2023

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge